**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| **JTH TAX, LLC d/b/a LIBERTY TAX SERVICE**, | 3:24cv570 |
| | **Case No. _____** |
| Plaintiff, | |
| v. | |
| **VERONICA MANZO, individually and doing business as "LATINA INCOME TAX,"** | |
| Defendant. | |
| _____/ | |

**PLAINTIFF'S VERIFIED COMPLAINT**
**FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff JTH Tax LLC d/b/a Liberty Tax Service ("Liberty"), through its undersigned counsel, alleges for its Verified Complaint against Defendant Veronica Manzo, in her individual capacity and d/b/a Latina Income Tax ("Manzo" or "Defendant"), as follows:

**INTRODUCTION**

1. Manzo is a former Liberty franchisee who has violated the non-competition, non-solicitation, and post-termination covenants in her franchise agreement with Liberty after she was terminated as a franchisee for breaching the terms of her franchise agreement.

2. Until recently, Manzo was the franchisee of a Liberty Tax Service® franchise location in Sparks, Nevada pursuant to a franchise agreement (the "Franchise Agreement").

3. Liberty terminated the Franchise Agreement in August of 2023 following Manzo's repeatedly and prolonged failure to pay monies owed to Liberty under the Franchise Agreement.

4. Since the termination of the Franchise Agreement, Manzo has willfully breached the post-term non-compete and non-solicitation covenants in the Franchise Agreement by actively

competing against Liberty by offering tax preparation services under a different name less than a mile from her former Liberty franchise location.

5.      Despite repeated requests to do so, Manzo has also not returned Liberty's confidential information and trade secrets, as required by the Franchise Agreement. Manzo is using Liberty's confidential information and trade secrets to compete against Liberty and to solicit Liberty's customers.

6.      Liberty seeks a preliminary and permanent injunction requiring Manzo to comply with the post-term covenants and obligations in the Franchise Agreement, and Liberty seeks an order: (1) enjoining Manzo from directly or indirectly, for a fee or charge, preparing or electronically filing income tax returns, or offering financial products within Manzo's former Liberty franchise territory or within 25 miles of her former Liberty franchise territory for two years; (2) enjoining Manzo from directly or indirectly soliciting any customers served by Manzo's former Liberty franchise location within the last 12 months for two years; (3) enjoining Manzo from using Liberty's confidential information and trade secrets, including Liberty's operation manuals and client lists, files and records; and (4) requiring Manzo to immediately return Liberty's confidential information and trade secrets, including Liberty's Operations Manual and client lists, files and records.

## **PARTIES**

7.      Plaintiff JTH Tax LLC d/b/a Liberty Tax Service is a Delaware limited liability company with its principal place of business at 2378 Liberty Way, Virginia Beach, Virginia 23456.

8.      LT Intermediate Holdco LLC (a Delaware limited liability company) is the sole member of Plaintiff JTH Tax LLC.

9.      LT Holdco LLC (a Delaware limited liability company) is the sole member of LT

Intermediate Holdco, LLC.

10.    LTCT Intermediate Holdings, LLC (a Delaware limited liability company) is the sole member of LT Holdco LLC.

11.    LTCT Holdings, LLC (a Delaware limited liability company) is the sole member of LTCT Intermediate Holdings, LLC.

12.    BP LTCT, LLC (a Delaware limited liability company) is the sole member of LTCT Holdings, LLC.

13.    The members of BP LTCT, LLC are BasePoint Group Inc. (a Delaware Corporation with a principal place of business in New York), and Drake Enterprises, Ltd. (a North Carolina corporation with a principal place of business in North Carolina).

14.    Defendant Manzo is a citizen of the State of Nevada who, upon information and belief, resides in Washoe County, Nevada.

15.    Latina Income Tax is a tax preparation business that competes with Liberty. Latina Income Tax is not registered as a business entity with the Nevada Secretary of State. Upon information and belief, Latina Income Tax is a "doing business entity," and it is solely owned and operated by Manzo. Latina Income Tax's principal place of business is 1949 Prater Way, Sparks, NV 89431.

## JURISDICTION AND VENUE

16.    This Court has personal jurisdiction over Manzo because she entered into a valid and enforceable franchise agreement with Liberty that contains a Virginia forum selection clause.

17.    The Court also has personal jurisdiction over Manzo because she has sufficient contacts with the Commonwealth of Virginia to be subject to personal jurisdiction in this District. Manzo had a substantial and continuing relationship with Liberty's headquarters in Virginia

Beach, Virginia, including the submission of regular reports, transmission of funds and other regular written and verbal communications, such that personal jurisdiction over Manzo is proper. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1984).

18.     This Court has original (diversity jurisdiction) subject matter jurisdiction over the claims asserted herein pursuant to 18 U.S.C. § 1332 because there is complete diversity of citizenship between Manzo (a citizen of Nevada), and Liberty (a citizen of Delaware, New York and North Carolina for jurisdictional purposes), and the amount in controversy exceeds $75,000.

19.     This Court has original (federal question) subject matter jurisdiction over this case pursuant to the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836, *et seq.*, as well as supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims under the DTSA.

20.     Pursuant to 28 U.S.C. §§ 1391(b)(2), this action is properly venued in the United States District Court for the Eastern District of Virginia because a substantial part of the events or omissions giving rise to the claims occurred within this District. Furthermore, Section 18.b of the Franchise Agreement contains a jurisdiction and venue provision, in which Manzo consented to venue and personal jurisdiction in this court.

## FACTUAL BACKGROUND

### A.     The Liberty Franchise System.

21.     Liberty is the franchisor of Liberty Tax Service® income tax preparation service centers located throughout the United States.

22.     Liberty owns the federally-registered Liberty Tax Service® trademarks, service marks, logos and derivations thereof (the "Marks"), and has spent substantial time and money advertising and promoting the distinctive and well-known Liberty Tax Service® system, which

4

sells income tax preparation and filing services and products to the public under the Marks. Franchisees license the Marks pursuant to franchise agreements.

23.     Pursuant to the terms of franchise agreements, Liberty discloses certain confidential information and trade secrets, including Liberty's confidential Operations Manual, methods of operation, customer information and records, and marketing information (collectively, "Liberty's Confidential Information"), to franchisees.

24.     Liberty franchisees are contractually obligated, upon termination, expiration, or nonrenewal of a franchise agreement, to immediately return, and desist from using or disclosing, all of Liberty's Confidential Information.

25.     Liberty has invested substantial time and money in maintaining and improving its franchise system, including, *inter alia*: (1) developing and maintaining service and product quality and methods of operation; (2) developing and maintaining uniform designs and markings for its services; (3) licensing trademarks and other proprietary information to franchisees; and (4) training franchisees.

26.     Based upon Liberty's investment in, and development of, its franchise system and Confidential Information, Liberty has grown to be one of the largest tax preparation franchises in the United States.

27.     Liberty plays an important role in the national economy, with a network of over 21,000 tax preparers.

**B.     Manzo's Acquisition and Operation of a Liberty Franchise**

28.     On or about October 27, 2014, Manzo entered into a Franchise Agreement with Liberty for a franchise territory known as NV004. Attached hereto as Exhibit A is a true and correct copy of the October 2014 Franchise Agreement for the NV004 territory.

29.     On or about December 3, 2019, Manzo entered into a Renewal and Release with Liberty in order to renew her Liberty franchise for an additional five year term. On or about December 3, 2019, Manzo entered into a Franchise Agreement with Liberty for the NV004 franchise territory. A true and correct copy of the Renewal and Release is attached hereto as Exhibit B and a true and correct copy of the December 2019 Franchise Agreement for the NV004 territory is attached hereto as Exhibit C.

30.     Pursuant to the Franchise Agreement for the NV004 territory, Manzo operated a Liberty franchise office at 2275 Oddie Blvd, Sparks, Nevada 89431 (the "Oddie Boulevard Location").

31.     There has been a Liberty franchise office at the Oddie Boulevard Location since approximately 2001.

###     C.     Obligations under the Franchise Agreement.

32.     Manzo is the franchisee and personally agreed to perform all the obligations under the Franchise Agreement, including all obligations related to the covenants not to compete, covenants not to solicit, and confidentiality obligations. *See* Ex. C, at § 27.

33.     In exchange for Liberty's grant of a franchise allowing her to "operate a tax return preparation business using Liberty's system and Liberty's Marks within the Territory," Manzo agreed to certain obligations while operating under the Franchise Agreement, as well as post-termination. *See id.*, § 1.

34.     Pursuant to the Franchise Agreement, Liberty provided Manzo with training in franchise operation, marketing, advertising, sales, and business systems. Manzo also received copies of Liberty's confidential operating, marketing, and advertising materials, which are not available to the public or to anyone who is not part of Liberty's business system. Manzo agreed to

keep these materials confidential in perpetuity, including following the termination or expiration of the Franchise Agreement. *See id.,* §§ 5, 12.

35.     The Franchise Agreement is for a five-year term. *See id.,* § 2.

36.     Pursuant to Section 4 of the Franchise Agreement, Manzo agreed to pay Liberty certain royalties and fees. *See id.,* § 4(d).

37.     Section 8(c) of the Franchise Agreement permits Liberty to terminate the Franchise Agreement with notice and opportunity to cure within seven days if, among other reasons, Manzo: (1) "violate[s] any term or condition of [the Franchise Agreement]…"; (2)  "ow[ed] to Liberty" an amount "more than thirty (30) days past due…"; or (3) "fail[ed] to comply with IRS standards applicable to e-file providers…." *Id.*, §§ 8(c)(i), (ii) and (iii).

38.     Section 9 of the Franchise Agreement sets forth certain of Manzo's post-termination obligations, including (among others) the obligations to: (1) transfer to Liberty all phone numbers used in connection with the operation of the Franchised Business; (2) assign to Liberty (if Liberty elects) her interests in any leases for the Franchised Business; (3) deliver to Liberty all customer lists, tax returns, files, and records; (4) return Liberty's confidential Operations Manual; (5) forever refrain from using Liberty's Confidential Information; and (6) adhere to the Franchise Agreement's post-termination non-competition and non-solicitation covenants. *See id.,* § 9.

39.     Pursuant to Section 10(b) of the Franchise Agreement, Manzo agreed to a post-termination covenant not to compete, which stated: "For a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business . . . you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns . . . within the Territory or within a twenty-five miles of the boundaries of the Territory." *Id.,* § 10(b).

40.     Pursuant to Section 10(d) of the Franchise Agreement, Manzo agreed to a post-termination covenant not to solicit, which stated: "For a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchise Business . . . [she would] not, within the Territory or within twenty-five (25) miles of the boundaries of the Territory, directly or indirectly solicit any person or entity served by any of [her] prior Liberty offices within the last twelve (12) months that [she was] a Liberty franchisee, for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products." *Id.,* § 10(d).

41.     Also pursuant to Section 10(d) of the Franchise Agreement, Manzo agreed: "[F]or a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a signator to this Agreement, not to employ or solicit for employment without Liberty's prior written consent any of Liberty's employees or those of any other of Liberty's franchisees, or induce any such employee to leave his or her employ." *Id.*

42.     Pursuant to Section 10(f) of the Franchise Agreement, Manzo agreed "not to do any act that is, in Liberty's determination, harmful, prejudicial or injurious to Liberty . . ." *Id.,* § 10(f).

43.     The restrictive covenants contained in Section 10 of the Franchise Agreement are necessary to protect Liberty's legitimate, protectable interest in its franchise business, including but not limited to:

      a.    Maintaining and protecting Liberty's goodwill and customer loyalty;

      b.    Retaining customer relationships;

      c.    Liberty's customer lists, customer identification, tax returns, and other confidential information;

      d.    Preserving Liberty's ability to facilitate the operation of Liberty franchises where Liberty franchise offices are currently located; and

e.      Protecting Liberty from irreparable harm.

44.    When a franchisee operates a competing tax business in violation of Section 10 of the Franchise Agreement, Liberty loses customer goodwill and loyalty because customers associate Liberty with the competing location and personnel. Additionally, it is significantly more difficult to find a replacement franchisee when the former franchisee operates a competing tax business in their former franchise territory in violation of Section 10 of the Franchise Agreement.

45.    Pursuant to Section 10(h) of the Franchise Agreement, Manzo agreed "that the provisions of Section 10 are reasonable, valid and not contrary to the public interest." To that end, Manzo agreed to "waive all defenses to the strict enforcement of Section 10," and further agreed "Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10." *Id.,* § 10(h).

46.    Pursuant to Section 10(i) of the Franchise Agreement, Manzo agreed that "[t]he covenants contained in Section 10 shall survive any termination or expiration of this Agreement." *Id.,* § 10(i).

47.    Pursuant to Section 12(a) of the Franchise Agreement, Manzo agreed "not to directly or indirectly communicate, divulge, or use any Confidential Information for [her] personal benefit or the benefit of any other person or legal entity except as specifically provided by the terms of this Agreement or permitted by Liberty in writing prior to disclosure." Manzo further agreed that, upon termination of the Franchise Agreement, she would "never use or disclose . . . Liberty's Confidential Information in any manner whatsoever, including, without limitation, in the design, development or operation of any business substantially similar to the Franchised Business." *Id.,* § 12(a).

48.     Pursuant to Section 12(c) of the Franchise Agreement, Manzo agreed to: "(i) refrain from using Confidential Information for any purpose other than the operation of the Franchised Business pursuant to this Agreement; (ii) maintain absolute confidentiality of Confidential Information during and after the term of this Agreement; (iii) not make unauthorized copies of any portion of Confidential Information; and (iv) adopt and implement all reasonable procedures, including, but not limited to, those required by Liberty, to prevent unauthorized use of or disclosure of Confidential Information." *Id.*

49.     Section 16 of the Franchise Agreement contains a grant of security interest pursuant to which Manzo agreed: "As security for the performance of your obligations under this Agreement, including payments owed to Liberty, you hereby grant Liberty a security interest in all of the assets of your Franchised Business, including inventory, accounts, supplies, contracts, and proceeds and products of all those assets . . . If you default in any of your obligations under this Agreement, Liberty may exercise all rights of a secured creditor granted to Liberty by law, in addition to our other rights under this Agreement and at law." *See id.,* § 16.

50.     Section 18 of the Franchise Agreement contains a mandatory choice of law provision, which states: "Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto." *Id.,* § 18(a).

51.     Section 18 of the Franchise Agreement also contains a jurisdiction and venue provision, which states: "In any suit brought by any or all of the Liberty Parties, that in any way relates to or arises out of this Agreement or any of the dealings of the dealings between you and any or all of the Liberty Parties, you consent to venue and personal jurisdiction in the state court in the city or county where Liberty's national office is located and the federal courts located in the

10

State where Liberty's national office is located (presently Virginia Beach, Virginia state courts and the United States District Courts located in the Commonwealth of Virginia)."

52.    In Section 27 of the Franchise Agreement, Manzo agreed, as signatory to the Franchisee Agreement, she would: "perform all the obligations in and relating to this Agreement, including, but not limited to, all obligations related to the covenants not to compete, covenants not to solicit, confidentiality obligations, obligations to make payments specified herein, pay any other promissory notes and other debts due to Liberty . . ." *Id.,* § 27.

> **D.**    **Termination of the Franchise Agreement.**

53.    On April 12, 2023, Liberty issued a Notice to Cure Default to Manzo based upon her failure to pay monies past due to Liberty in the amount of $134,839.08. The Notice to Cure Default further informed Manzo that a failure to cure the default could result in Liberty terminating the Franchise Agreement. A true and correct copy of the April 12, 2023 Notice to Cure Default is attached hereto as Exhibit D.

54.    Following Liberty's April 12, 2023 Notice to Cure Default, Manzo failed to cure the default or otherwise pay Liberty the monies owed as set forth in the Notice to Cure Default.

55.    On August 28, 2023, Liberty sent Manzo a letter terminating the Franchise Agreement pursuant to Section 8(c)(ii) of the Franchise Agreement based upon Manzo's failure to cure the default identified in the Notice to Cure Default within thirty days. A true and accurate copy of the August 28, 2023 termination letter is attached hereto as Exhibit E.

56.    As of August 28 2023, Manzo owed a sum total of $165,722.96 in debt to Liberty consisting entirely of accounts receivable. Attached hereto as Exhibit F is a true and correct copy of Manzo's Debt Balance as of August 28, 2023.

57.     The termination letter reminded Manzo of her post-term obligations under her franchise agreement, including her obligations (among others) to:

      a.     Pay to Liberty all monies owing;

      b.     Transfer all telephone numbers used in relation to her Liberty franchise business to Liberty;

      c.     Deliver to Liberty all paper and electronic copies of customer lists, tax returns, files, and records;

      d.     Deliver to Liberty the Operations Manual and all updates;

      e.     Upon Liberty's request, assign any interest in any lease, sublease or any other agreement related to her Liberty franchise business;

      f.     Cease using and forever refrain from using and disclosing Liberty's Confidential Information and trade secrets; and

      g.     Adhere to the provisions of the post-termination covenants not to compete and not to solicit in the Franchise Agreement.

*See* Ex. E.

58.     Since the termination of the Franchise Agreement, Manzo has failed to pay any monies owed to Liberty, or to otherwise comply with multiple different post-term restrictive covenants and obligations in the Franchise Agreement.

**E.**     **Post-Termination Breaches of the Franchise Agreement**

      1.     Manzo's breaches of the post-term covenant not to compete in the Franchise Agreement.

59.     Manzo has breached, and continues to breach, the Franchise Agreement's post-term covenants not to compete by operating a competing tax business under the name "Latina Income Tax" at 1949 Prater Way, Sparks, NV 89431 (the "Latina Income Tax Location").

60.     The Latina Income Tax Location is not only within Manzo's former Liberty franchise territory, but is within one mile of the Oddie Boulevard Location where Manzo previously operated her Liberty franchise office.

12

61.     On information and belief, Manzo is the sole proprietor of Latina Income Tax.

    a.  *IRS Electronic Filing Identification Number data shows that Manzo is unlawfully operating Latina Income Tax.*

62.     All commercial tax return businesses are required to have an Electronic Filing Identification Number ("EFIN") issued by the IRS for each business location they own and operate. An EFIN allows the IRS to monitor, track, and regulate who is electronically filing tax returns.

63.     During her time operating as a Liberty franchisee, Manzo maintained an EFIN with the IRS which identified the Oddie Boulevard Location as Manzo's operating address and identified that Manzo was "doing business as" "Liberty Tax Service." Following termination of the Franchise Agreement, Manzo maintained the same EFIN she previously utilizing while acting as a Liberty franchisee, however, the operating address for that EFIN was changed to Manzo's home address in Reno, Nevada, and Manzo's "doing business as" name was changed from "Liberty Tax Service" to "Latina Income Tax."

64.     Moreover, the IRS's electronic database of Authorized IRS e-file Providers (available at https://www.irs.gov/efile-index-taxpros-search?zip=89506&state=All&ero= All&bureau=All&developer=All&transmitter=All) identifies "Latina Income Tax" as an authorized e-file provider. The "point of contact" for Latina Income Tax is with Manzo.

    b.  *Liberty confirms that Manzo is unlawfully operating Latina Income Tax.*

65.     On March 21, 2024, a Liberty employee visited the Latina Income Tax Location. *See* Hart Decl., ¶ 6.

66.     During the visit, the Liberty employee took the following two photos of the exterior of the Latina Income Tax Location, which depict as sign in the front door that states "OPEN," and a neon sign in the window that states "INCOME TAX."

13





*See id.*, ¶¶ 7-8.

67.     Upon entering Latina Income Tax, the Liberty employee observed Manzo speaking with an individual who appeared to be either a current or prospective tax customer, and another individual who, upon information and belief, was Manzo's daughter. *See id.*, ¶ 9.

68.     The following photograph, which the Liberty employee captured, depicts Manzo speaking with the aforementioned tax customer. The individual believed to be Manzo's daughter was sitting in the desk across from her and is not pictured below.



*See id.*, ¶ 10.

69.     Below is a screenshot of the same photograph, which is zoomed in to more clearly show Manzo's face.



*See id.*, ¶ 11.

70.     The Liberty employee subsequently approached Manzo and informed her that she was employed by Liberty and that he was visiting due to reports of Manzo operating a competing tax preparation business in violation of the post-term obligations in her franchise agreement, after which Manzo confirmed that she was, in fact, operating Latina Income Tax. *See id.*, ¶ 12.

        c.  *A private investigator further confirms that Manzo is unlawfully operating Latina Income Tax, and soliciting former Liberty franchise employees.*

71.     On March 22, 2024, Liberty retained a private investigator to investigate Manzo's unlawful conduct at the Latina Income Tax Location. *See* Brennan Decl., ¶ 6.

72.     At the Latina Tax Location, there was visible exterior signage advertising "Latina Tax Services." Below is a photo of the exterior from March 22, 2024:



*See id.*, ¶¶ 7, 9.

73.　　While at the Latina Income Tax Location, the private investigator spoke with an employee named Martha Ramirez Hernandez ("Hernandez"), who stated that Latina Income Tax provides tax return preparation services to individuals. *See id.*, ¶¶ 10-11.

74.　　Hernandez provided the private investigator with a business card which identifies Latina Income Tax and the Latina Income Tax Location, and identifies Hernandez as a "Tax Preparer." Below is a screenshot of the business card:



*See id.*, ¶¶ 12-13.

75.    Hernandez was an employee of Manzo's former Liberty office.

2.    <u>Manzo is creating customer confusion in order to benefit from her previous affiliation with Liberty, and capitalize on Liberty's goodwill in her former franchise territory.</u>

76.    Manzo is intentionally creating customer confusion with respect to whether the Latina Income Tax Location is affiliated with Liberty in order to benefit from her previous affiliation with Liberty, and to capitalize on Liberty's goodwill within the franchise territory.

77.    As evidenced above, in both their exterior signage and business cards for Latina Income Tax, Manzo has utilized an American flag in order to capitalize on the goodwill associated with Liberty's well-known American-themed motif at their franchise locations.

78.    Manzo hired at least one former Liberty franchise employee who previously worked at the Oddie Boulevard Location – Hernandez – to now work at the Latina Income Tax Location.

79.     At the Latina Income Tax Location, exterior signage advertises a "Refund Transfer" promotion in which tax preparation customers can "PAY NOTHING TODAY" and instead "have [their] fees deducted from [their] refund." *See* Brennan Decl., ¶ 8.

18

80.     Liberty has in the past, and currently offers, an identical promotion at their franchise locations. *See* www.libertytax.com/refund-transfer (last visited Jul. 17, 2024).

       3.     Breaches of the covenant not to solicit in the Franchise Agreement,

81.     After the termination of the Franchise Agreement, Manzo further breached, and continues to breach, the post-term covenant not to solicit by hiring former Liberty employees to work for the Latina Income Tax Location.

82.     Manzo hired Hernandez, a former Liberty employee, to work at the Latina Income Tax Location.

83.     On information and belief, several other former Liberty employees are now working at the Latina Income Tax Location.

84.     Since the termination of the Franchise Agreement, Manzo has breached, and continues to breach, the post-term covenant not to solicit by soliciting, and preparing tax returns for, Liberty customers served by her former Liberty franchise location through her nearby Latina Income Tax Location.

85.     Two customers of nearby Liberty franchise locations informed the Liberty franchisee for those locations that they received solicitation phone calls from Manzo after the termination of her Franchise Agreements, in which she offered tax preparation services with her competing tax business at the Oddie Boulevard Location.

       4.     Misappropriation of Liberty's confidential information and trade secrets.

86.     Since termination of the Franchise Agreement, Manzo has not returned Liberty's Confidential Information and trade secrets, including Liberty's Operations Manual and customer lists, tax returns, files, and records.

87.     Liberty's Confidential Information is provided to a nationwide network of franchisees, who use the trade secrets in the operation of Liberty franchises throughout the country. Liberty's Operations Manual is provided to Liberty franchisees throughout the country, and it contains valuable information concerning the policies and procedures that each franchisee in Liberty's interstate network of franchisees must adhere to, including, policies and procedures concerning marketing, management, software, technology, security, compliance, customer support, employee training, and site selection.

88.     The customer lists, files and records, which Manzo failed to return, reflect that Manzo's former Liberty location served customers from Nevada and California (which is approximately 12 miles from the Oddie Boulevard Location).

89.     On information and belief, Manzo is currently using, and will continue to use, Liberty's Confidential Information and trade secrets in the operation of her competing tax business in violation of the non-compete and non-solicitation covenants in the Franchise Agreement if she is not enjoined from doing so.

**F.     Irreparable Harm to Liberty**

90.     Manzo's unlawful competition has irreparably harmed, and will continue to irreparably harm Liberty and its current and future franchisees, and can only be stopped through injunctive relief.

91.     As detailed above, Manzo is unlawfully competing by operating a competing tax business less than a mile from her former Liberty franchise by; (a) using Liberty's Confidential Information; (b) employing Liberty's former employees; (c) offering promotions identical to Liberty; and (d) soliciting the same customers as her former Liberty office.

92.     In essence, Manzo has simply changed the name under which she operates and has continued operating a nearly identical tax business in direct violation of the terms of the Franchise Agreement.

93.     Moreover, by and through her training and experience as a Liberty franchisee, Manzo is now competing with knowledge of Liberty's marketing plans, the costs of operating a Liberty franchise, and the business strategies employed by Liberty franchisees. Manzo knows exactly how Liberty's business system operates in terms of training, procedures, promotion, marketing, products, pricing, technology, and every other critical aspect of its business that gives Liberty franchisees an edge in the marketplace.

94.     There has been a Liberty franchise office in the NV004 territory, and at the Oddie Boulevard Location, for years prior to Manzo's operation as a Liberty franchisee. During that time, Liberty has invested significant time, money and resources into developing customer goodwill and loyalty, building a customer base, and creating a stable franchise system in the Sparks, Nevada area.

95.     Manzo's unlawful competition has irreparably harmed, and continues to irreparably harm, Liberty through loss of customer goodwill and loyalty; loss of business opportunities and relationships to provide tax preparation services and related services; loss of customers; loss of franchisee stability; loss of ability to sell other franchises; and loss of competitive advantage in the NV004 area. None of this irreparable harm can be quantified or compensated for through monetary damages.

96.     Based upon Liberty's operation of tax preparation offices and franchise locations throughout the United States, when a Liberty franchise location remains in a franchise territory for a number of years (and particularly when it remains at the same address for a number of years),

Liberty develops goodwill and loyalty with customers in the territory. Prospective Liberty franchisees will often seek franchise territories with locations that have remained in a franchise territory for a number of years (and particularly when they remain at the same address for a number of years) in order to capitalize on this goodwill and loyalty. For this reason, Liberty franchisees specifically acknowledge in the Franchise Agreement that Liberty loses customer goodwill when they breach the covenants not to compete.

97.    When Manzo acquired the Oddie Boulevard Location, the location had already been a Liberty office for years. Manzo capitalized on the customer goodwill and loyalty that Liberty developed in the franchise territory when she acquired and operated her Liberty office. Manzo is now depriving Liberty of this goodwill and loyalty by operating a competing business in her former Liberty franchise territory, and less than a mile from her former Liberty franchise location.

98.    Based upon Liberty's operation of tax preparation offices and franchise locations throughout the United States, when a former Liberty franchisee unlawfully operates a competing tax business in their former franchise territory following termination of their Franchise Agreement, it reduces the value of the franchise territory and makes it significantly more difficult for Liberty to attract a replacement franchisee for the franchise territory. If Liberty cannot find a replacement franchisee, it typically loses most of its customers in the franchise territory. Even when Liberty can find a replacement franchisee for the territory, Liberty still typically suffers a significant loss of customers because Liberty loses its competitive advantage in the territory.

99.    Because Manzo (through Latina Income Tax) is operating her competing tax business in her former Liberty franchise territory (and less than a mile from her former Liberty office), it significantly reduces the value of the franchise territory.  Liberty has lost, and will likely

22

continue to lose, a significant number of its customers in the NV004 franchise territory along with its competitive advantage in the NV004 franchise territory.

100.    Based upon Liberty's operation of tax preparation offices and franchise locations throughout the United States, when a former Liberty franchisee hires former Liberty employees to unlawfully compete in their former franchise territory following termination of their Franchise Agreement, it creates customer confusion regarding the competing location's affiliation with Liberty.

101.    Because Manzo hired former Liberty employees to work for Latina Income Tax, there will likely be customer confusion regarding Latina Income Tax's affiliation with Liberty.

102.    Based upon Liberty's operation of tax preparation offices and franchise locations throughout the United States, Liberty franchisees, including those in Nevada, communicate with each other and/or monitor the actions of other current and former Liberty franchisees. If Liberty franchisees observe that other franchisees are able to "flip signs" and operate competing tax business within their franchise territories, it can create a "domino effect" and cause other franchisees to also "flip signs" and begin competing against Liberty.

103.    If Manzo's unlawful operation of a competing tax business in her former franchise territory is allowed to continue, it will likely create a "domino effect" and cause other current and former Liberty franchisees in Nevada to "flip signs" and begin operating competing tax businesses within their franchise territories, which will significantly reduce the value of a Liberty franchise in Nevada (and throughout the country), and threaten the stability of Liberty's entire franchise system in Nevada (and throughout the country).

104.    It is vitally important to Liberty's franchise system in Nevada (and throughout the country), and Liberty's franchisees in Nevada (and throughout the country), that the Court enforce

23

the post-term restrictive covenants and obligations in the Franchise Agreement, which expressly prohibit Manzo from operating her competing tax business using Liberty's Confidential Information.

105.    Liberty has no means of enforcing the post-term restrictive covenants and obligations in the Franchise Agreement—and remedying the irreparably harm that Liberty has suffered, and continues to suffer—other than to seek injunctive relief from this Court.

## COUNT I
### *Breach of the Franchise Agreement*
### *(Equitable Claim)*

106.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

107.    The Franchise Agreement is a valid and enforceable contract.

108.    Liberty has performed every obligation and condition required under the Franchise Agreement.

109.    Liberty rightfully terminated the Franchise Agreement on August 28, 2023.

110.    In the Franchise Agreement, Manzo agreed to be bound by certain post-term covenants and obligations.

111.    Pursuant to Sections 10(b) and 10(d) of the Franchise Agreement, Manzo agreed to post-term covenants not to compete and not to solicit. *See* Ex. C.

112.    Manzo has materially breached, and continues to materially breach, Sections 10(b), 10(d) of the Franchise Agreement by operating a competing tax business at the Latina Income Tax Location, and soliciting Liberty employees and customers.

113.    Pursuant to Section 9 of the Franchise Agreement, Manzo agreed to post-termination obligations, including (among others) the obligations to: (1) deliver to Liberty all

customer lists, tax returns, files, and records; (2) return Liberty's confidential Operations Manual; and (3) forever refrain from using Liberty's Confidential Information. *See* Ex. C, at § 9.

114.   Manzo has materially breached Section 9 of the Franchise Agreement by, among other breaches: (1) failing to deliver to Liberty all customer lists, tax returns, files, and records; (2) failing to return Liberty's confidential Operations Manual; and (3) using Liberty's Confidential Information to establish and operate a competing tax business.

115.   Pursuant to Section 12(a) of the Franchise Agreement, Manzo agreed not to use any of Liberty's Confidential Information for her personal benefit, and not to use or disclose Liberty's Confidential Information in the development or operation of any business substantially similar to her Liberty franchise business. *See* Ex. C, at § 12.

116.   Pursuant to Section 12(c) of the Franchise Agreement, Manzo agreed to refrain from using Liberty Confidential Information for any purpose other than the operation of her Liberty franchise business, and maintain absolute confidentiality of Liberty Confidential Information during and after the term of the Agreement. *Id.*

117.   Manzo materially breached Section 12 of the Franchise Agreement by using Liberty's Confidential Information and trade secrets in the development and operation of her competing tax business after the termination of the Franchise Agreement.

118.   As a direct and proximate result of these material breaches, Liberty has incurred and will continue to incur substantial losses, fees, and expenses for which Manzo is liable.

119.   As a result of Manzo's past, present, and potential breaches, Liberty has suffered, and will continue to suffer, actual, substantial, and irreparable damages, including but not limited to:

    a.    Loss of customer goodwill and loyalty;

25

b. Loss of business opportunities and relationships to provide tax preparation services and related services;

c. Loss of customers;

d. Loss of profits;

e. Loss of franchisee stability;

f. Loss of ability to sell other franchises;

g. Loss of value in confidential business information;

h. Loss of competitive advantage in the Franchise Territory;

i. Attorneys' fees; and

j. Cost of this action.

120. Liberty has been, and will be, irreparably harmed by Manzo's actions, and monetary damages are an insufficient remedy.

121. Manzo expressly acknowledged in the Franchise Agreement that "any breach of the covenants not to compete causes damage to the integrity of Liberty's franchised system, loss of franchisee and customer goodwill and irreparable harm." *Id.*, § 10(c).

122. Pursuant to Section 27 of the Franchise Agreement, Manzo agreed to "perform all the obligations in and relating to this Agreement, including, but not limited to, all obligations related to the covenants not to compete, covenants not to solicit, confidentiality obligations, obligations to make payments specified herein, pay any other promissory notes and other debts due to Liberty." *See* Ex. C, at § 27.

123. Unless her wrongful conduct is enjoined, Manzo will continue to breach the non-competition and non-solicitation covenants, and continue to use Liberty's Confidential Information.

## COUNT II

26

### Breach of the Franchise Agreement
### (Monetary Claim)

124.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

125.    The Franchise Agreement is a valid and enforceable contract.

126.    Liberty has performed every obligation and condition required under the Franchise Agreement.

127.    Pursuant to Section 9(d) of the Franchise Agreement, Manzo agreed that, immediately upon termination of the Franchise Agreement, she would pay to Liberty all amounts owing to Liberty. *See* Ex. C at § 9.

128.    As of August 28 2023, Manzo owed a sum total of $165,722.96 in debt to Liberty consisting entirely of accounts receivable. Manzo has failed to pay any monies owed to Liberty since the termination of the Franchise Agreement. *See* Ex. F.

129.    Additionally, as detailed above, pursuant to Section 10 of the Franchise Agreement, Manzo agreed to the post-term non-competition and non-solicitation covenants. *See* Ex. C at § 10.

130.    Manzo has been, and currently is, competing against Liberty and soliciting customers in violation of the non-compete and non-solicit covenants in the Franchise Agreement by operating a competing tax business in her former Liberty franchise territory.

131.    Manzo has been, and will continue, to compete against Liberty and solicit Liberty's customers using Liberty's Confidential Information and trade secrets, which Manzo failed to return to Liberty in violation of Sections 9(g) 9(h), and 9(i) of the Franchise Agreement.

132.    Each of Manzo's foregoing breaches constitute a material breach of the Franchise Agreement.

133.    As a direct and proximate result of Manzo's breaches of Sections 9 and 10 of the Franchise Agreement, Liberty has suffered and will continue to suffer damages in an amount to be

proven at trial, for which Manzo liable, including but not limited to, compensatory damages, consequential damages, and disgorgement of profits in an amount exceeding $75,000.

134.    Pursuant to Section 27 of the Franchise Agreement, Manzo agreed to "perform all the obligations in and relating to this Agreement, including, but not limited to, all obligations related to the covenants not to compete, covenants not to solicit, confidentiality obligations, obligations to make payments specified herein, pay any other promissory notes and other debts due to Liberty." *See* Ex. C, at § 27.

**COUNT III**
***Common Law Conversion***

135.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

136.    Liberty owns and has the right to possess the following property by virtue of the Franchise Agreement:

      a.    Any original and all copies, including electronic and cloud based copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers of their Liberty franchise business;

      b.    Any original and all copies, including electronic and cloud based copies and media, containing, customer tax returns, files, and records; and

      c.    All copies of the Operations Manual and any updates.

*See* Ex. C, at § 9.

137.    Manzo was authorized to use and possess the aforementioned property while operating Manzo's former Liberty franchise business pursuant to the Franchise Agreement.

138.    Pursuant to Section 9 of the Franchise Agreement, upon termination of the Franchise Agreement, Manzo was required to immediately transfer and deliver all of the aforementioned property to Liberty. *See id*.

28

139.    In the termination letter, Liberty reminded Manzo of her obligations under the Franchise Agreement, including her obligations (among others) to deliver to Liberty all paper and electronic copies of customer lists, tax returns, files, and records, the Operations Manual complete with all updates.

140.    As of the date of this filing, Manzo still possesses, and has not returned, any of the aforementioned property to Liberty.

141.    As such, Manzo is intentionally interfering with Liberty's use and enjoyment of its property.

142.    Manzo has converted Liberty's property for her financial gain through her operation of a competing tax business and her solicitation of Liberty's customers.

143.    Manzo's interference with Liberty's property by virtue of not transferring or delivering it to Liberty has deprived Liberty of its possession and use of the aforementioned property.

144.    As a direct and proximate result of Manzo's conversion of Liberty's property, Liberty has suffered damages and will continue to suffer damages, for which Manzo is liable, until the aforementioned property is delivered and returned to Liberty.

## COUNT IV
### *Violation of Defend Trade Secrets Act of 2016*

145.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

146.    The Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, provides a private civil action for the misappropriation of a trade secret that is related to a product or service used in, or intended for use in, interstate or foreign commerce.

147.    Liberty owns numerous trade secrets, including but not limited to, Liberty's Operations Manuals, training manuals, training programs, methods of operation, marketing strategies, marketing programs, customer lists, and customer information.

148.    Each of Liberty's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

149.    Liberty went through great effort and expense to build its customer lists through the operation of a Liberty franchise office in the territory for several years, including for several years before Manzo acquired the franchise territory. Liberty's customer lists, files and records give it a competitive advantage by providing it with a pool of customers to draw business from each tax season.

150.    Liberty's customer lists, files and records provide a substantial competitive advantage in the marketplace, thus giving rise to independent economic value. A competitor, like Manzo, could obtain economic value from Liberty's customer lists, files and records because they provide information for potential customers who have previously used similar tax preparation services.

151.    Liberty's trade secrets are not readily ascertainable by the public as they are disclosed only to franchisees in the operation of a franchise business pursuant to a franchise agreement.

152.    Franchisees are licensed to use the trade secrets only pursuant to the franchise agreements in the operation of a Liberty franchise to provide paid tax preparation and related services for customers.

153.    Pursuant to the Franchise Agreement, Liberty disclosed its trade secrets to Manzo for the sole purpose of operating her Liberty franchise business.

154.    Liberty has taken extensive measures to preserve and protect these trade secrets for the purpose of maintaining their competitive advantage in the marketplace.

155.    Liberty limits the disclosure of its trade secrets to franchisees who execute a franchise agreement.

156.    The Franchise Agreement explicitly provides for the protection of the above referenced trade secrets, including requiring the return of all originals and copies of the confidential Operations Manual, and customer lists, files and records to Liberty upon expiration, termination, or nonrenewal of the Franchise Agreement; requiring former franchisees and their representatives to maintain the confidentiality of the information; and requiring former franchisees and their representatives to never use the information for any purpose other than operating a franchised business pursuant to the Franchise Agreement.

157.    Pursuant to Sections 9 and 12 of the Franchise Agreement, Manzo agreed that upon termination of the Franchise Agreement, she would never use, disclose, or permit the use or disclosure of Liberty's trade secrets in any manner whatsoever, and that they would immediately return all Liberty Confidential Information, including trade secrets, upon termination.

158.    Manzo has failed to return Liberty's Confidential Information and trade secrets, including, but not limited to, the Operations Manual and all records from her former Liberty franchise location.

159.    Tax return preparation and filing implicates interstate commerce because tax returns are transmitted from where they are prepared (in this case, Nevada) to the IRS, which is located in Washington, DC.

31

160.    The customer lists, files and records, which Manzo failed to return, reflect that Manzo's former Liberty location served customers from Nevada and California (which is approximately 12 miles from the Oddie Boulevard Location).

161.    Liberty's Confidential Information is provided to a nationwide network of franchisees, who use the trade secrets in the operation of Liberty franchises throughout the country. Liberty's Operations Manual is provided to Liberty franchisees throughout the country, and it contains valuable information concerning the policies and procedures that each franchisee in Liberty's interstate network of franchisees must adhere to, including, policies and procedures concerning marketing, management, software, technology, security, compliance, customer support, employee training, and site selection.

162.    Manzo used, and is using, Liberty's Confidential Information and trade secrets during and after the termination of the Franchise Agreement in connection with tax preparation done to divert revenues from Liberty, and Liberty has not and would not consent to or authorize such use.

163.    Manzo intentionally and without Liberty's permission or authorization, misappropriated Liberty's trade secrets for her own economic benefit and with the intention and knowledge that her conduct would injure Liberty by, for example, causing Liberty to lose any customers successfully solicited by Manzo.

164.    As a direct and proximate result of Manzo's willful, improper, and unlawful disclosure and Manzo's willful, improper, and unlawful use of Liberty's trade secrets, Liberty has suffered and will continue to suffer irreparable injury.

165.    Pursuant to 18 U.S.C. § 1836(b)(3)(A), Manzo's actual and threatened use and misappropriation of Liberty's trade secrets should be enjoined from further disclosure or use.

166.    Manzo's conduct in misappropriating Liberty's trade secrets was, and continues to be, willful and malicious, warranting an award of exemplary damages in accordance with 18 U.S.C. § 1836(b)(3)(C) and reasonable attorneys' fees in accordance with 18 U.S.C. § 1836(b)(3)(D).

167.    Liberty further is entitled to a civil seizure remedy under the DTSA, and requests that the Court enter an order providing for the seizure of Liberty's property, including Liberty's Operations Manual and any updates thereto, and Liberty's customer lists, records, files and information.

## COUNT V
### *Unfair Competition*

168.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

169.    Manzo has improperly used and will continue to use Liberty's Confidential Information in furtherance of her competing business.

170.    Through her actions, Manzo is intentionally attempting to deceive Liberty's current and prospective customers for Manzo's business gain.

171.    As a direct and proximate result of Manzo's actions, Liberty has suffered and will continue to suffer irreparable injury, and is entitled to monetary damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Liberty prays for judgment against Manzo as follows:

1.    For the following preliminary and permanent injunctive relief:

   A.    Enjoin Veronica Manzo and all those acting by, through or in concert with her (including "Latina Income Tax") from directly or indirectly, for a fee or charge, preparing or electronically filing income tax returns, or offering Financial Products (as defined in the Franchise Agreement), within the Territories (as defined in the Franchise Agreement) or within twenty-five

(25) miles of the boundaries of the Territories, for two years following the entry of any injunction;

B.   Enjoin Veronica Manzo, and all those acting by, through or in concert with her (including "Latina Income Tax") from directly or indirectly soliciting any person or entity served by any of her prior Liberty office within the last twelve (12) months that she was a Liberty franchisee, for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products (as defined in the Franchise Agreement) for two years following the entry of any injunction;

C.   Enjoin Veronica Manzo from using or disclosing any of Liberty's Confidential Information (as defined in Section 12 of the Franchise Agreement), including without limitation, methods of operations, customer information, and marketing information;

D.   Order Veronica Manzo to deliver to Liberty any original and all copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers of her former Liberty franchise business;

E.   Order Veronica Manzo to deliver to Liberty any original and all copies, including electronic copies and media, containing customer tax returns, files, and records; and

F.   Order Veronica Manzo to deliver to Liberty all copies of the confidential Operations Manual and any updates thereto.

2.   For an accounting of Manzo's revenues and profits for all tax return preparation and electronic filing at the Latina Income Tax Location identified herein since January 1, 2023;

3.   For a monetary award against Manzo in an amount to be proven at trial, including, but not limited to, compensatory damages, expectancy damages, punitive damages, exemplary damages, and disgorgement of profits;

4.   For a monetary award against Manzo for Liberty's attorneys' fees and costs, in an amount to be proven at trial;

5.   For pre- and post-judgment interest; and

6.   For such other relief as the Court deems just and proper.

34

Dated: August 7, 2024.

Respectfully Submitted,

PLAINTIFF JTH TAX LLC d/b/a
LIBERTY TAX SERVICE


*/s/ Patrick K. Burns*
Patrick K. Burns (VSB #80188)
GORDON REES SCULLY MANSUKHANI, LLP
1101 King Street, Suite 520
Alexandria, VA 22314
202.399.1009
202.800.2999 (Facsimile)
pburns@grsm.com

James L. Messenger
(*Pro Hac Vice* Motion forthcoming)
GORDON REES SCULLY MANSUKHANI LLP
28 State Street, Suite 1050
Boston, MA 02109
857.263.2000
jmessenger@grsm.com

## **VERIFICATION**

GEOFF KNAPP does hereby verify and state pursuant to 28 U.S.C. § 1746:

I am Regional Director for JTH Tax LLC d/b/a Liberty Tax Service ("Liberty"). I have read the foregoing Verified Complaint, know the contents thereof, and state the allegations are true and correct. I base this Verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true and correct. The grounds of my knowledge, information and belief are derived from my position as Regional Director at Liberty, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Liberty's records and conversations with Liberty's employees.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on August 6, 2024.

DocuSigned by:

*Geoff Knapp*

BABABAC50B57469...

Geoff Knapp
Regional Director for JTH Tax LLC
d/b/a Liberty Tax Service